## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

JEFFREY S. LANDAHL,

      Plaintiff,

v.

CAROLYN W. COLVIN, in her capacity as
Commissioner of the Social Security
Administration,

      Defendant.

Case No. 2:12-cv-00131-MHW

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT**

## INTRODUCTION

      This case involves a challenge to the denial of supplemental security income by

the Social Security Administration. Currently pending before the court are cross motions

for summary judgment filed by Plaintiff Jeffrey S. Langdahl and Defendant

Commissioner of Social Security.[1]  (Dkts. 13 & 15).  Plaintiff is represented by Dana

Madsen and Maureen Rosette and Defendant is represented by Assistant United States

Attorney Pamela Jean DeRusha.  The Court has reviewed the motions and supporting

memoranda as well as the Administrative Record and deems these motions suitable for

[1]Carolyn W. Colvin became the Acting commissioner of Social Security on February 14,
2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is
substituted for Michael J. Astrue as the defendant in this suit.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1**

disposition without oral argument.  For the reasons that follow, the Court will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff filed an application for supplemental security income on March 19, 2008, alleging disability beginning July 30, 1982. (Tr. 136-39.)   Plaintiff's application was denied both initially and on reconsideration.  (Tr. 101-04; 108-10.)  Administrative Law Judge ("ALJ") Gene Duncan held a hearing on January 27, 2010, taking testimony from Plaintiff; Stephen Rubin, Ph.D., an impartial Medical Expert; and Deborah La Point, an impartial Vocational Expert. (Tr. 49-98.)  The ALJ  issued a decision finding Plaintiff not disabled on February 4, 2010. (Tr. 28-46.)  Plaintiff filed a timely appeal to the Appeals Council.  (Tr. 23-24.)  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-4.)  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ in January of 2010, Plaintiff was 43 years old.  (Tr. 40.)  He received his GED in 1985 and a culinary degree in 1986 or l987 while incarcerated and no has past relevant work experience.  (Tr. 40, 52, 140, 143, 158.)  On his disability report, Plaintiff alleged disability due to post-traumatic stress disorder (PTSD), intermittent explosive disorder (IED), chronic depression, back problems due to extra sacral vertebrae, blindness in left eye due to detached retina, and asthma.  (Tr. 152.)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2**

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving a disability in the first four steps of the sequential evaluation, after which the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. 20 C.F.R § 416.920(b). The ALJ found Petitioner had not engaged in substantial gainful activity since March 19, 2008, the application date. (Tr. 30).

At step two, it must be determined whether claimant suffers from a severe impairment, or a combination of impairments that is severe according to 20 CFR § 416.920(c). The ALJ found that Plaintiff had the following impairments, all of which he rated as severe: partial blindness in left eye, asthma, and personality disorder with anti-social features. (Tr. 30.*)*

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment, as set forth in 20 C.F.R Part 404, Subpart P Appendix 1. If the claimant's impairments meet or equal a listed impairment and meet the duration requirements set forth in 20 C.F.R. § 416.909, the analysis is done and the claimant is conclusively shown to be disabled. If, however, the claimant's impairments do not meet or equal the criteria for the listed impairments, the ALJ must determine a claimant's residual functional capacity (RFC) according to 20 C.F.R. § 416.920(e). An individual's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3**

residual functional capacity is an assessment of the most a person can do despite his or her limitations.  20 C.F.R. §  404.1545(a)(1).

In this case, at step three, the ALJ found that the Plaintiff's symptoms from his physical and mental impairments did not meet or equal a listed impairment.  (Tr. 31). Next, the ALJ found that Plaintiff had a residual functional capacity consistent with an ability to perform light work as defined in 20 C.F.R. §  416.967(b), except that he is limited to routine work; should avoid concentrated exposure to fumes, odors, dusts, or gases; could tolerate only superficial contact with the general public, co-workers, and supervisors; should work independently with objects and not people; should receive fair criticism from supervisors with objective standards; has limited depth perception; should have no direct access to drugs or alcohol; should not perform security work; would be off task 4.5% of the workday; could not have intense interaction with others; could not perform high-stress work; and would be absent four to six hours per month for medical treatment.  (Tr. 34.)

At step four, the ALJ must determine whether the claimant has the residual functional capacity to perform the requirements of his past relevant work.  20 C.F.R. § 416.965.  Here, the ALJ noted that Plaintiff had no past relevant work and that transferability of job skills is therefore not an issue.  (Tr. 40.)  The fifth and final step of the analysis requires an assessment of whether the claimant is able to do other work that exists in significant numbers in the national economy considering the claimant's residual functional capacity, age, education and work experience.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4**

Here, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as office cleaner and marker.  (Tr. 41.)   Accordingly, the ALJ determined that Plaintiff is not disabled.  (Tr. 41-42.)

## STANDARD OF REVIEW

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted).  It is more than a scintilla but less than a preponderance.  *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5**

Finally, it is well-settled that if there is substantial evidence to support the decision of the ALJ, the decision must be upheld "if supported by inferences reasonably drawn from the record . . ." even "where the evidence is susceptible to more than one rational interpretation." *Id.* The Court may not substitute its judgment for that of the ALJ. *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006).

## ISSUES

Plaintiff contends that the ALJ's conclusions are not supported by substantial evidence. More specifically, Plaintiff argues that he is more limited from a psychological standpoint than what was determined by the ALJ and that the ALJ erred in the following ways: (1) by not properly considering or rejecting the opinion of Dr. Pollack or by not properly considering the opinion of Stephen Rubin, Ph.D., and (2) by relying primarily on the Psychiatric Review Technique completed by psychological evaluator Rita Flanagan, Ph.D., and subsequently affirmed by Edward Beaty, Ph.D. Plaintiff does not challenge the ALJ's finding that his alleged back and neck pain were not severe impairments or the ALJ's finding that none of his impairments met or equaled a listed impairment.

Although Plaintiff does not specifically address the ALJ's credibility finding, because the respective psychologists' opinions were based in large part on Plaintiff's self report, the Court will address the issue.

## DISCUSSION

### A.    Credibility Determination

The ALJ found that Plaintiff's statements concerning the intensity, persistence and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6**

limiting effects of the symptoms of his impairments were not credible to the extent they were inconsistent with the determined residual functional capacity.  (Tr. 35.)

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  To reject a claimant's testimony regarding impairments, "the ALJ [is] required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).  The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  "The ALJ must support his credibility finding 'with specific, clear and convincing reasons.'" *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; claimant's daily activities; claimant's work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  In addition to those factors, the ALJ may consider prior inconsistent statements regarding the symptoms or, "other testimony by the claimant that appears less than candid."

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7**

*Chaudhry*, 688 F.3d at 672 (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)).  The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Id.*

Here, the AJL provided specific findings supporting his credibility  determination.  In doing so, he stated that he "placed special emphasis on the medical records from [Plaintiff's] application date onward as this was the time period relevant to this decision." (Tr. 35.)   The ALJ discredited Plaintiff's claims of "rather extreme physical limitation" given "the lack of significant treatment or complaints to medical providers."  (Tr. 35.) The ALJ cited chart notes and x-ray results from July 2002 through October 2005 pertaining to back and neck pain that were either negative or indicative of only mild issues.  (Tr. 35; 308; 348; 351.)  Although an x-ray showed moderate to severe degenerative changes at C5-6 in October 2005, physical therapy improved his status by 50-75% and Plaintiff reported less neck pain with activities of daily living and increased range of motion.  (Tr. 35; 333; 367.)  The ALJ noted that in June 2006 when Plaintiff was treated for headache complaints, Plaintiff continued to move his upper extremities well, his gait was normal, and he had "fairly good" range of motion.  (Tr. 36; 331.)  The ALJ also found significant the fact that Plaintiff did not take pain medication even when it was prescribed indicating that his pain was not significantly problematic.  (Tr. 36.)  Finally,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8**

there was no evidence that Plaintiff sought treatment for or complained of neck or back pain again from 2006 until he mentioned it in his December 2009 psychological evaluation.  (Tr. 36.)  Of particular significance was medical consultant Dr. Alfred Scottolini's opinion dated December 24, 2008, confirming a prior disability determination that Plaintiff's alleged physical impairments were either "non-existent (sic) or nonsevere."  (Tr. 36; 305.)

The ALJ also based his credibility finding on the inconsistency between Plaintiff's self-reports of activity and his allegations of pain.  (Tr. 36.)  Such activities included reconstruction or restoration of automobiles, work as a janitor ten hours a week, lifting weights, mowing the lawn, riding a bike, and doing household chores.  (Tr. 36; 239; 241; 260; 297; 299; 405.)   Finally, the ALJ was persuaded by the fact that Plaintiff could sit for 80 minutes during the hearing despite claiming at the hearing that he could not sit for more than 20 minutes, that he could play poker for seven hours in February 2009, and that consulting psychologist Joyce Everhart observed no pain behavior or facial grimaces during the consultation, and Plaintiff was able to sit through the examination.  (Tr. 259; 374.)

Although Plaintiff is not challenging the fact that the ALJ did not find his neck pain and back pain to be severe impairments, Plaintiff's lack of credibility on those physical impairments properly informed the ALJ's credibility decision on Plaintiff's mental impairments.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9**

With regard to his mental impairments, the ALJ likewise found Plaintiff's claimed limitations less than credible and provided specific findings in support of that determination.  First, the ALJ noted that Plaintiff missed some mental health counseling sessions in November 2006 and February 2007 and several more after restarting counseling in August 2007.  (Tr. 36, 241.)  The ALJ gave little weight to the mental health counselor's opinion that Plaintiff was unable to engage in substantial gainful activity because of  a mental disorder for over 12 months because those opinions were from a non-accepted medical source and "completely unsupported by the evidence preceding them."  (Tr. 37; 244; 246.)  Plaintiff reported in December 2007, April 2008, and May 2008 that he was doing well, was finding things of interest to do, and was mowing the lawn and watching sports with his son.  (Tr. 37; 289; 294; 297.)

The ALJ next turned to the psychological examination conducted in May 2008 by Dr. Everhart as part of the initial disability determination.  (Tr. 37; 259-63.)  Basing her opinion on Plaintiff's report of his daily activities, his claims to be doing well, her observations of him during the examination, and the results of testing, Dr. Everhart concluded that he did not meet the criteria of PTSD and stress/explosive disorder, his depression was mild (perhaps due to medication), and that his only difficulty would be working with the public and interacting closely with bosses and co-workers.  (Tr. 37; 262-63.)  The ALJ also found significant Plaintiff's statement to Dr. Everhart that the main reason he was unable to work full time was that "he did not like people."  (Tr. 37; 262.)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10**

The ALJ next cited that opinion of psychological evaluator Rita Flanagan, Ph. D., who reviewed the medical evidence through June 2008 and concluded that Plaintiff could work but that he would "work best away from the public and require direct communication from a supervisor." (Tr. 37; 282.) Her assessment was affirmed by psychological evaluator Edward Beaty, Ph.D. (Tr. 37; 304.)

The ALJ noted that from September 2008 to February 2009, Plaintiff continued to report to his mental health counselors that "life is good," that he was doing well, that he was going to the casino on a weekly basis, and spending time at the library researching how to file a motion for visitation rights to his daughter. (Tr. 38; 374-75; 384-86; 388.)

The ALJ then referred in considerable detail to the psychological evaluation performed by Dennis Pollack, Ph.D., to whom Plaintiff's attorney had referred him. (Tr. 38.) As will be discussed more fully below, the ALJ assigned little weight to Dr. Pollack's opinion based in part on inconsistencies in Plaintiff's statements and Plaintiff's behavior at the evaluation.

The Court finds that the ALJ properly followed the requisite two-step analysis in determining Plaintiff's credibility. First, he determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. He then proceeded to the next step of determining the intensity, persistence, and limiting effects of the symptoms. *See Batson v. Comm'r of Social Security Administration*, 359 F.3d 1190, 1195-96 (9th Cir. 2004) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11**

1996)).

In rejecting Plaintiff's testimony regarding his impairments, the ALJ supported his decision with sufficiently specific findings, identified what testimony was not credible and what evidence undermined her complaints, and supported his credibility finding "'with specific, clear and convincing reasons.'" *Chaudhry*, 688 F.3d at 672 (citation omitted). The Court "may not substitute [its] judgment for that of the ALJ" but rather must affirm the ALJ's credibility decision "[w]hen evidence reasonably supports either confirming or reversing the ALJ's decision." *Batson*, 359 F.3d at 1196. That there may be more than one reasonable interpretation of the record, and that the claimant's interpretation differs from the ALJ's does not necessarily warrant reversal of the ALJ's finding. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court cannot second guess the ALJ's credibility finding if it is supported by substantial evidence in the record. *Batson*, *id.* *See also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The Court therefore finds that the ALJ's credibility determination was supported by substantial evidence, and "the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Tommasetti*, 533 F.3d at 1039.

**B.     Rejection of the Opinion of Plaintiff's Examining Physician**

As Defendant observed, the ALJ considered the several differing medical opinions regarding Plaintiff's mental functioning. *See, e.g.,* Tr. 259-63, 266-82, 304, 402-12, 414-29. After considering all of these opinions, the ALJ gave great weight to Dr. Everhart's

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12**

opinion, significant weight to Dr. Rubin's testimony at the hearing, and little or no weight to Dr. Pollack's opinion, and he appeared to also rely at least in part on the opinions of Drs. Flanagan and Beaty which were similar to Dr. Everhart's opinion.  (Tr. 30-40.)

There are three types of physicians distinguished in the regulations implementing Title II and Title XVI of the Act: "'(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining [or reviewing] physicians.)'" *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  *See* 20 C.F.R. §§  404.1527(d), 416.927(d).  In general, a treating physician's opinion is given more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Holohan*, 246 F.3d at 1202.  Within that framework, "the regulations give more weight to opinions that are explained than to those that are not . . . ."  *Id*. (citing 20 C.F.R. § 404.1527(d)(3)).

An ALJ is not bound by a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Furthermore, an ALJ may reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons.  *Id*. Where a treating physician's opinion is contradicted by another physician's opinion, the AJL may only reject the treating physician's opinion by providing "specific and legitimate reasons that

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13**

are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Likewise, the contradicted opinion of an examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). An ALJ may reject the opinion of a treating or examining physician in favor of a non-examining physician's opinion where other factors support the rejection in addition to the opinion of non-examining physician. *Id*. at 831.

It is solely the function of the Secretary to resolve conflicting testimony or opinions. *Morgan v. Comm'r of Social Security Admin*., 169 F.3d 595, 601 (9th Cir. 1999). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. at 600-01.

Here, as stated above, Plaintiff contends the ALJ neither properly considered nor rejected the opinion of examining physician Dr. Pollack or the opinion of the non-examining medical expert Dr. Rubin and instead favored the Psychiatric Review Technique completed by Dr. Flanagan and affirmed by Dr. Beaty that was consistent with Dr. Everhart's evaluation. Essentially, Plaintiff claims that giving significant weight to Dr. Everhart's opinion was in error.

The ALJ gave specific and legitimate reasons for giving significant weight to Dr. Everhart's opinion that Plaintiff had the ability to listen, understand, remember, and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14**

follow simple instructions, could complete a simple three-step task, and had the ability to complete simple one or two-step tasks of a repetitive nature.  (Tr. 263.)  She cautioned, however, that Plaintiff would do best if he did not have to interact closely with bosses and coworkers.  (Tr. 263.)   Most importantly to the ALJ, Dr. Everhart's opinion was "consistent with the overall evidence" and similar to that of Drs. Flanagan and Beaty. (Tr. 40; 282; 304.)  Consistency with the record as a whole is an acceptable consideration when giving weight to an opinion.  20 C.F.R. § 416.927(c)(4).  Drs. Flanagan and Beaty found Plaintiff's limitations to be moderate at most and concluded that he could understand, remember, and carry out basic work instructions.  (Tr. 280-82.)  Like Dr. Everhart, they found that he would best work away from the public, have superficial co-worker interaction, and direct communication with his supervisor.  (Tr. 282, 304.) Finally, the ALJ noted that Plaintiff reported in engaging in various activities which likewise supported Dr. Everhart's opinion especially with regard to concentration and persistence.

The ALJ "assign[ed] little weight to Dr. Pollack's evaluation" primarily because (1) Plaintiff's actions during the evaluation were completely inconsistent with his actions at his counseling sessions, Dr. Everhart's evaluation, and the other physical evidence, and because Plaintiff appeared to be attempting to skew the test results in his favor; and (2) because his invalid MMPI-2 scores and Dr. Pollack's indication that Plaintiff was exaggerating his symptoms rendered any conclusions based on those exaggerations

suspect.  (Tr. 38.)  The ALJ then described the internal inconsistencies in Dr. Pollack's

mental medical source statement.  (Tr. 38-39.)  The ALJ next explained his decision to

give little weight to Dr. Pollack's opinion:

> As mentioned above, the undersigned finds it somewhat
> dubious that the claimant would have only mild limitation in
> his ability to maintain attention and concentration for
> extended periods and no limitation in his ability to sustain an
> ordinary routine without special supervision, but a marked
> limitation in his ability to perform activities within a schedule
> or complete a normal workday and workweek.  (Ex. B17F,
> p.9).  Regardless, Dr. Pollack's conclusions are tainted by the
> claimant's falsified test results, and they are given little
> weight.

Tr. 39.

   The ALJ then addressed an issue ultimately raised by Plaintiff in his arguments;

*i.e*., that Plaintiff's actions in Dr. Pollack's evaluation were caused by lack of medication:

> It is possible that the claimant's lack of medication caused his
> outbursts during the evaluation, as he appeared to perform
> quite well during Dr. Everhart's evaluation and subsequent
> counseling sessions when on his medication.  This does not,
> however, indicate disability, but rather a need for proper and
> continued treatment.  The claimant's lack of insurance for
> such medication does not sway this decision as there are low-
> cost alternatives that can be pursued.

Tr. 39.

   A credibility assessment cannot be based on a failure to take medication due to

lack of insurance or inability to pay for the medication.  *See Smolen v. Chater*, 80 F.3d

1273, 1284 (9th Cir. 1996).  However, the proscription is against characterizing the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16**

failure to take medication as a clear and convincing reason for discrediting symptom testimony. Here, the ALJ is not doubting that the symptoms exist when Plaintiff is not taking prescribed medication but is recognizing that the failure to take the medication – for whatever reason – was one reason for assigning little significance to Dr. Pollack's opinion. In other words, the ALJ is not saying that Plaintiff does not have the claimed symptoms if untreated, he is stating that the symptoms are treatable and that the basis for Dr. Pollack's opinion is skewed by the fact that Plaintiff was not on medication at the time of the examination. Furthermore, Plaintiff's behavior at the examination was only one factor among others cited for rejecting Dr. Pollack's opinion.

An ALJ is justified in rejecting an examining psychologist's opinion in favor of a non-examining psychologist's opinion where, as here, an examining psychologist's opinion conflicts with the opinions of several non-examining mental health professionals and there was a conflict with the claimant's testimony and the medical records. *Lester*, 81 F.3d at 831 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1042-43 (9th Cir. 1995)). Stated another way, keeping in mind the requirement to provide specific, legitimate reasons for rejecting an examining psychologist's opinion, where there is "a clear conflict between the examining psychologist's opinion and the overwhelming weight of the other evidence of record," rejection of that opinion is justified. *Id.* Most significantly, suspect psychological testing results provide a legitimate reason for rejecting an examining psychologist's opinion based on those results. *Id.* The Court notes that despite identical

standards for rejecting a treating or an examining psychologist's opinion, in reality, it is easier to support rejection of an examining physician's opinion given the fact that the opinions of treating physicians are entitled to greater deference than those of examing physicians:

> Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion.  Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion.

The Court finds that the ALJ provided specific and legitimate reasons for rejecting Dr. Pollack's opinion that Plaintiff would have a marked limitation in his ability to perform activities within a schedule or complete a normal workday and workweek. Therefore, the ALJ's decision to rely on the opinion of Dr. Everhart was not error.

**C.     The ALJ's Interpretation of Dr. Rubin's Opinion**

Dr. Rubin, who had reviewed the entire record, testified as a psychological expert at the hearing before the ALJ.  (Tr. 57-70.)  Dr. Rubin listed the following conditions he felt were substantiated in the record:  affective disorder, personality disorder with antisocial avoidance, and perhaps narcissistic characteristics.  (Tr. 60-61.)  As stated above, Dr. Rubin concluded that Plaintiff had (1) mild restriction of activities of daily living, (2) moderate difficulty maintaining social functioning, (3) moderate difficulty in concentration, persistence or pace; and (4) no episodes of decompensation.  (Tr. 66.)  Dr. Rubin's understanding of the term "moderate" was "more than a slight limitation in a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18**

particular area, but the individual is still able to function satisfactorily" and that Plaintiff would "show some difficulties, but would not be impossible for the client to participate in a work situation." (Tr. 68-69.)  Dr. Rubin concluded that sustained work in a normal job situation five days a week and eight hours a day would be problematic given Plaintiff's interpersonal conflict issues and that he might characterize some of those issues as marked but he did not have the records to support such a finding.  (Tr. 69-70.)

In response to further questioning by the ALJ, Dr. Rubin confirmed his understanding of "moderate" and stated that "marked" would mean that he probably could not sustain employment.  (Tr. 70.)

The ALJ incorporated the various moderate limitations identified by Dr. Rubin into the residual functional capacity.  In doing so, he limited Plaintiff to (1) superficial contact with the general public, co-workers, and supervisors with no intense interaction with others; (2) working independently with objects rather than people and receive fair criticism from supervisors with objective standards; (3) performing routine work that was not high-stress work; (4) and that he would be "off-task" 4.5% of the workday.  (Tr. 34.)

The vocational expert, in response to a hypothetical posed by the ALJ containing limitations to account for the moderate limitations identified by Dr. Rubin, concluded that medium level work was available that Plaintiff could perform.  (Tr. 92-93.)  The ALJ then added other limitations and inquired about the availability of light work, and the vocational expert concluded that there were still available jobs although the number of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19**

jobs would be reduced.  (Tr. 95-97.)

Plaintiff's counsel then asked the vocational expert "if we consider the hypothetical questions, but we add in the mental limitations of Dr. Rubin" in the areas he marked "moderately limited," would an individual be able to work with those moderate limitations.  (Tr. 97.)  The vocational expert said no because Plaintiff would not be able to sustain work over time when an individual has all the difficulties together.  Based on the responses to counsel's questions, Plaintiff contends that he is disabled based on the vocational expert's testimony which had been based on counsel's interpretation of Dr. Rubin's findings.

As stated above, the ALJ incorporated several limitations to account for the moderate limitations Dr. Rubin had found.  Plaintiff has not contended that additional limitations were needed.  A finding of moderate limitations without more does not dictate a conclusion that non-exertional limitations significantly limits the ability to do work beyond any exertional limitation.  *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007).  Furthermore, the ALJ noted that "the Administration defines 'moderate' as a more than slight limitation, but a limitation that still permits an individual to function satisfactorily." (Tr. 41.)

The function of the vocational expert is to opine on whether jobs exist in the economy that could be performed by a claimant within the contours of the hypothetical presented by the ALJ.  Ultimately, it is the ALJ's responsibility to determine the issue of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20**

disability. Plaintiff's argument is based on what Defendant terms an "alternative interpretation" of the evidence and Dr. Rubin's testimony. However, even if Plaintiff's interpretation is reasonable, the Court cannot overturn the ALJ's findings to the extent they are supported by inferences reasonable drawn from the record. *Batson*, 359 F.3d at 1193; *Burch*, 400 F.3d at 679.

## CONCLUSION

The Court finds that the ALJ's decision was supported by substantial evidence and free from error.

## ORDER

1.    Defendant's Motion for Summary Judgment (Dkt. 15) is **GRANTED.**

2.    Plaintiff's motion for summary judgment (Dkt. 13) is **DENIED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant.



DATED: December 30, 2013

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21**